**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **JASON KEITH T.,[1]** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION** |
| **v.** | ) | |
| | ) | **No. 25-2615-JWL** |
| **FRANK BISIGNANO,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**MEMORANDUM AND ORDER**

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Social Security Disability Insurance (SSDI) benefits and Supplemental Security Income (SSI) benefits pursuant to sections 216(i), 223, and 1614(a)(3)(A) of the Social Security Act, 42 U.S.C. §§ 416(i), 423, and 1382c(a)(3)(A) (hereinafter the Act). Finding no error in the Administrative Law Judge's (ALJ's) decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

## I. Background

[1] The court makes all its "Memorandum and Order[s]" available online. Therefore, in the interest of protecting the privacy interests of disability claimants, it has determined to caption Social Security decisions using only the initial of the Plaintiff's last name.

Plaintiff protectively filed an application for SSDI and SSI benefits on August 3, 2023. (R. 17, 239-41). After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Plaintiff claims the ALJ failed properly to support his conclusion that Plaintiff can sit for six hours in an eight-hour workday, the vocational expert (VE) improperly relied upon the Department of Labor (DOL) classification of light work which requires the ability to lift and carry 25 pounds, and the ALJ erroneously failed to address Plaintiffs need for a bariatric chair at his workstation.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). "Substantial evidence" refers to the weight, not the amount, of the evidence. It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). Consequently, to overturn an agency's finding of fact the court "must find that the

evidence not only supports [a contrary] conclusion, but compels it." I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988) (brackets in Bowling)). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals

the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC). 20 C.F.R. § 404.1520(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, he is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999). The court addresses the errors alleged in Plaintiff's Social Security Brief.

## II. Discussion

### A. Ability to Sit 6 Hours in an 8-Hour Workday

Plaintiff attacks the ALJ's finding he can sit for 6 hours in an 8-hour workday. He argues,

> the ALJ's decision contains no specific rationale for this conclusion. The ALJ's RFC narrative does not specifically address [Plaintiff's] ability to sit. Indeed, outside of the RFC assessment, this domain of work activity does not appear in the decision. There is no logical bridge to the conclusion that [Plaintiff] can sit for six hours of an eight-hour workday.

(Pl. Br. 7). Plaintiff cites record evidence wherein he reported his alleged difficulties sitting. Id. 7-8 (citing Exs. B4E, B5E). He noted the ALJ did not question him at the hearing regarding his ability to remain seated, but he cited his testimony at the hearing that there were times his uncle or grandfather was required to assist him to arise from the toilet. Id. 8. Plaintiff cited his reports of pain in the medical record which apparently related to sitting. Id. 8-9. Plaintiff cited the medical opinion of Ms. Martin, APRN in support of his argument that the ALJ failed sufficiently to support his finding and he challenges the prior administrative medical findings of the state agency medical consultants as insufficient to support the ALJ's findings. Id. 9-12.

The Commissioner argues the ALJ complied with the agency's articulation requirements in his RFC assessment. He argues the ALJ provided a narrative discussion explaining his RFC assessment, the record evidence supports his findings, and more is not required. (Comm'r Br. 4-6). He explains why, in his view, the ALJ properly evaluated the medical opinion of Ms. Martin and the prior administrative medical findings of the state agency medical consultants. Id. 6-8.

In his Reply Brief Plaintiff states he "appreciates that it would be unworkable for an ALJ to discuss every symptom in detail. But this does not relieve the ALJ of the responsibility to describe why the RFC supports the conclusion that [Plaintiff] could sit for most of the day." (Reply 2).

Plaintiff's argument in his Brief that "There is no logical bridge to the conclusion that [Plaintiff] can sit for six hours of an eight-hour workday," and his argument in his Reply Brief that the ALJ has "the responsibility to describe why the RFC supports the

conclusion that [Plaintiff] could sit for most of the day," demonstrate the error in his argument. These arguments miss the point that although an ALJ must make his decision understandable and reviewable, it is Plaintiff's burden to prove he is disabled not the Commissioner's burden to prove he can work. Plaintiff's burden of proof includes the burden to prove between steps three and four of the sequential evaluation process the limitations in his RFC. Thus, it is Plaintiff's burden to prove he cannot sit for six hours in an eight-hour workday.

The decision makes clear that the ALJ found both that Plaintiff is able to sit for six hours total in an eight-hour workday and that Plaintiff has not met his burden to prove greater limitations. Therefore, to show error before this court it is Plaintiff's burden to point to record evidence compelling a finding that he is limited to less than six hours sitting in an eight-hour workday. He has not done so.

Plaintiff recognizes in his Brief that the ALJ considered Plaintiff's allegations of symptoms allegedly limiting his ability to sit but he does not acknowledge that the ALJ found his allegations inconsistent with the record evidence and discounted those allegations. Plaintiff nevertheless relies on his allegations of limiting symptoms to prove his limitations without showing error in the ALJ's discounting of those allegations. (Pl. Br. 7-9). This is faulty argumentation.

Plaintiff next relies on Ms. Martin's opinion that Plaintiff "would not be able to sit, walk, and/or stand for a full workday." Id. 10 (quoting R. 723). The short answer to that argument is that six hours is not a full workday, so Ms. Martin's opinion is not inconsistent with the RFC assessed by the ALJ. The full answer was provided by the

ALJ when he explained that he found Ms. Martin's opinion only partially persuasive because "it is vague and does not set out specific functional limitations. [And f]urther limitations than those in RFC are not supported by the medical record." (R. 28). As the ALJ explained, Ms. Martin's opinion does not state why Plaintiff cannot sit, walk, and/or stand for a full workday and she does not opine as to specific limitations on Plaintiff's sitting, standing, and/or walking abilities during a workday.

**B. Improper Reliance on the DOL Classification for Light Work**

Plaintiff quotes SSR 24-3p for the proposition that VEs are required to explain the differences between a source of vocational data and the Social Security regulations when they use a source that defines exertion, education, or skill levels differently than those regulations. (Pl. Br. 13). Plaintiff notes the VE testified she used occupational data from the Dictionary of Occupational Titles (DOT), Selected Characteristics of Occupations (SCO), information provided by the Department of Labor (DOL), the Census Bureau, county records, and her professional experience in identifying three representative occupations containing 245,000 light, unskilled jobs requiring a Specific Vocational Preparation (SVP) level of 2. Id. Plaintiff also asserts, "The VE also tesfified [sic] that she had information gathered by Standard Occupational Classification ("SOC") code, which included multiple DOT occupations." Id. (citing R. 61).

Plaintiff cites an Occupational Requirements Survey (ORS) factsheet for the proposition that the DOL defines light work as requiring the lifting and carrying of up to 25 pounds rather than 20 pounds as defined by the DOT and the Social Security regulations. Id. at 14 &n3. Plaintiff cites information regarding the SOC codes which

include the three representative jobs which were presented by the VE and relied upon by the ALJ. Plaintiff asserts that within those SOC codes, the mean maximum lifting/carrying demand for the SOC group including the bench assembler occupation is 39.6 pounds, for the SOC group including the inserting machine operator occupation is 33.49 pounds, and for the SOC group including the mold machine tender occupation is 41.6 pounds. (Pl. Br. 15). Plaintiff concludes by arguing that at the hearing "[t]he VE did not explain the differences between her testimony and the BLS's [(Bureau of Labor Statistics)] published data," and the VE's testimony is, therefore, insufficient to support the agency's step 5 burden. Id. 16.

In his response Brief, the Commissioner recognized that the agency had promulgated SSR 24-3p which was applicable in early 2025 before the decision in this case was issued on January 15, 2025. He explains,

> The new SSR continues to recognize the DOT as a reliable source of vocational information, but allows vocational experts to use other reliable sources, including sources structured differently than the DOT. Id. at *3. At the hearing, vocational experts are expected to identify the sources of the data they use and, where applicable, to explain their general approach to estimating job numbers. Id. at *4. If the vocational expert uses a source that defines exertion, skill, or education level differently than the agency, the vocational expert is expected to acknowledge and explain the difference. Id.

(Comm'r Br. 14) (citing SSR 24-3p. 2024 WL5256890 at *3, *4). The Commissioner points out that Plaintiff's counsel specifically stated they had no objections to Ms. Hastert serving as a VE in this case. Id.

The Commissioner points out the sources the VE relied upon for her opinions— "the DOT; the Selected Characteristics of Occupations (SCO), the Department of Labor

(DOL), the Census Bureau, county records, and her '40-plus years of actual development and writing of return to work plans and do [sic] performing labor market surveys.'" (Comm'r Br. 15) (quoting R. 61) ("[sic]" in Comm'r Br.). He explained,

> After identifying sources, the vocational expert explained her general approach to estimating job numbers (Tr. 61). She relied on her "practical experience in placing people in these occupations and researching labor markets, in regards to the employer base that would support this opinion" (Tr. 61). She also testified that the information from the DOL and Census Bureau was "gathered by SOC [Standard Occupational Classification] codes which would include multiple occupations" (Tr. 61). She "reduce[d] that down to a reasonable expectation for the occurrence of this occupation" (Tr. 61).

Id.

The Commissioner points to the VE's hearing testimony also quoted by Plaintiff, that she had relied on her experience when using her source data and when differentiating between multiple DOT occupations within the same SOC code. Id. 15-16. He points out,

> When given the opportunity to cross examine the vocational expert, counsel asked one question inquiring about the impact of absenteeism. The expert answered those questions [sic]. But there were no questions about any of the issues raised here—the expert's sources, how the expert used those sources to estimate job numbers, and the job number estimates.

Id. 16 (citations omitted). He points out that despite submitting two post-hearing briefs Plaintiff never argued the alleged VE testimony error before the agency. The Commissioner explains SSR 24-3p's expectation that concerns about the VE testimony should be raised at the hearing.

> As a general rule, concerns or challenges to vocational evidence should be raised at the hearing. SSR 24-3p, 2024 WL 5256890, at *4. The agency's new ruling is clear on this point. "At the hearing level, when the claimant is represented, we expect the representative to raise any relevant questions or challenges about the VE's testimony at the time of the hearing and to

> assist in developing the record through appropriate questions to the VE." Id. The agency explained its expectations. "Raising relevant questions about or challenges to the VE's testimony at the time of the hearing, when the VE is ready and available to answer them, furthers the efficient, fair, and orderly conduct of the administrative decision-making process." Id. at n.10.

(Comm'r Br. 17).

Plaintiff argues that the VE relied on information from the DOL, the DOL classifies light work as requiring lifting or carrying up to 10 pounds frequently and lifting or carrying 11 to 25 pounds occasionally, and therefore the DOL defines exertion differently than does the DOT. He then argues the VE was required by SSR 24-3p to explain this difference and how she accounted for it, and because she did not do so, it was error for the ALJ to rely upon the VE testimony.

The court does not agree. Plaintiff purports to base his argument upon a factsheet from the DOL, BLS but the factsheet is actually an ORS publication which states, "The ORS publishes five strength levels (sedentary, light, medium, heavy, and very heavy), which are part of the published physical demands." Available online at, https://www.bls.gov/ors/factsheet/strength.htm. (last visited August 17, 2026). While it seems clear the ORS is an agency within the BLS which is within the DOL, it is by no means clear that the DOL defines light exertion within all its agencies to include lifting and carrying up to 25 pounds occasionally. The DOT and the SCO (which define light exertion to include lifting or carrying up to only 20 pounds occasionally) were propagated by the DOL. DOT available online at www.occupationalinfo.org, (last visited

August 17, 2026). Significantly, while the VE stated she had relied on information from the DOL, she did not say she had relied on information from the ORS.

It is important to note that the SSA explained one of the reasons it rescinded SSR 00-4p and replaced it with SSR 24-3p.

> At the hearing level, the requirements of SSR 00-4p have led to unnecessary remands to resolve apparent conflicts that were not identified at the hearing when the VE testified.

SSR 24-3p 2024 WL 5256890, *2 (SSA Dec. 6, 2024). It went on to explain:

> Because VEs and VSs [(Vocational Specialists)] are impartial and qualified professionals whom we consult because of their expertise, a more detailed inquiry into the sources of data or approaches used is not usually required. At the hearing level, when the claimant is represented, we expect the representative to raise any relevant questions or challenges about the VE's testimony at the time of the hearing and to assist in developing the record through appropriate questions to the VE.

SSR 24-3p, 2024 WL 5256890, *4 &n.10 (SSA Dec. 6, 2024) (n.10 cites 20 C.F.R. § 404.1740 "Rules of conduct and standards of responsibility for representatives").

As the Commissioner pointed out in his Brief, Plaintiff did not object to the VE's qualifications in this case and did not bring up any issues with the VE's testimony at the hearing when she was available and prepared to answer any questions regarding her testimony. Finally, the VE testified at the hearing that an individual with Plaintiff's age, education, and past work experience and with the RFC assessed by the ALJ would be capable of the full range of sedentary work and a limited range of light work exemplified by the three representative occupations at issue here. (R. 60). Plaintiff argues that even if he can perform the RFC assessed by the ALJ, the case should be remanded because the VE (who testified that she is familiar with the SSA's term defining light work (R. 58) and

has over 40 years' experience working in job placement (R. 62)) might have included a number of jobs in the representative occupations at issue which required lifting or carrying 25 pounds rather than 20 pounds. If there was error in this case, Plaintiff's counsel failed to address it timely and appropriately and the court finds it harmless.

**C. Need for a Bariatric Chair**

Plaintiff asserts his body weight varied between 274 pounds at the time of his application for benefits and 260 pounds at the time of his hearing. (Pl. Br. 16). He "presented evidence that standard office chairs are safety-tested to 253 to 275 pounds" to the ALJ in prehearing correspondence. Id. (citing R. 351, 607). Plaintiff argues the ALJ erred in failing to rule on this prehearing request or motion despite that the SSA's Hearing, Appeals, and Litigation Law Manual (HALLEX 01260.052) requires a ruling on such prehearing requests or motions. Id. Plaintiff argues that a bariatric chair would be a work accommodation and acknowledges SSR 11-2p which provides that when determining "whether a person can do other work that exists in significant numbers in the national economy, [the SSA does] not consider whether he or she could do so with accommodations, even if an employer would be required to provide reasonable accommodations under the Americans with Disabilities Act of 1990." Id.

The court sees no error here. First, Plaintiff's weight during the pendency of his application before the agency fits within the cited guidelines for safety-testing office chairs. Second, Plaintiff's representative's prehearing brief (R. 351) does not make a request or a motion to be ruled upon at the hearing. Rather, it asserts that Plaintiff "would likely require a special bariatric chair to perform any seated work," and it

acknowledges that such a requirement would be an ADA accommodation which will not be considered by the agency. (R. 351).

The second "prehearing" document cited by Plaintiff is a representative brief dated January 7, 2025, the day of the hearing, refers to counsel's earlier "pre-hearing brief arguments," and refers to the ALJ's hypothetical question at the hearing which allowed "four hours of standing/walking with six hours of sitting" and cannot be a prehearing request or motion. Id. 607. Moreover, the second brief's reference to the "pre-hearing brief arguments" confirms the earlier brief was not a request or a motion requiring an on-the-record ruling, but an argument implicitly rejected by the ALJ's findings in the decision at issue. Finally, Plaintiff's assertion that he cannot use a "standard office chair" is without any evidentiary support for the assumption that light workplaces in general or the representative occupations in this decision in particular—bench assembler, inserting machine operator, or mold machine tender—even use a standard office chair—or any other workbench, chair, or seat which would not appropriately and safely support him.

Plaintiff has not shown error in the decision below.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated August 19, 2026, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**